1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JONI GOLDYN, et al.,                    ) | |
|                         ) | 2:06-CV-0950-RCJ-RJJ |
|            Plaintiffs,           ) | |
|                         ) | |
|       vs.                  ) | **ORDER** |
|                         ) | |
| CLARK COUNTY, et al.,              ) | |
|                         ) | |
|            Defendants.           ) | |
| _____ ) | |

This matter comes before the Court on Defendants' Motion for Summary Judgment (#59), Plaintiff's Countermotion for Rule 56(f) Leave to Supplement (#68), and Plaintiff's Motion to Amend (#60).  Plaintiff Joni Goldyn had her conviction overturned by the Ninth Circuit and now seeks damages against the State and its officers under 42 U.S.C. § 1983 and state tort law.  The Court has considered the motions, the pleadings on file, and oral argument on behalf of all parties.  Pursuant to the following analysis, Defendants' Motion for Summary Judgment is *granted*, Plaintiff's Motion to Amend is *denied*, and Plaintiff's Motion for 56(f) Leave is *denied*.

**BACKGROUND**

Plaintiff Joni Goldyn[1] was convicted of five counts of drawing and passing checks with insufficient funds, in violation of NRS 205.130.  Because she had previously been convicted of

---

[1]   Joni Goldyn has utilized several alias names in the past, including in commission of the crimes she was convicted of.  These names include Frances Gay, Joan Carver, and Joan Trujillo.

1    three felonies and one gross misdemeanor, all fraud related, Goldyn was sentenced as a habitual

2    criminal to five full life sentences.  Plaintiff appealed her conviction before three courts, but to

3    no avail.  However, after twelve years in prison, the Ninth Circuit overturned her conviction in

4    2006 based on an interpretation of the relevant Nevada statute.  Plaintiff now seeks damages

5    under 42 U.S.C. § 1983 against Las Vegas Metropolitan Police Department ("LVMPD"), its

6    officers, and other state officials for her arrest and confinement.

7            In November 1987, Plaintiff Joni Goldyn opened checking and savings accounts with the

8    Nevada Federal Credit Union (NFCU).  Although Goldyn had previously been convicted for

9    three felonies, NFCU extended to Goldyn a $1,000 loan, a $500 line of credit attached to her

10   checking account, a credit card, and a check guarantee card.  The back of the guarantee card read

11   as follows:

12          This credit union guarantees payment of card-holder's checks drawn prior to the
             expiration date by the person whose name appears on the face of this card subject
13          to the following conditions: 1) Check amount shall not exceed $ 100 cash or $
             500 for merchandise; 2) Card number and expiration date must appear on the
14          check . . . .

15   By January 1988, Goldyn had depleted the funds in her accounts, used up most of her $500 credit

16   line, and accumulated various bank fees, resulting in a net negative balance.  Nevertheless,

17   Goldyn continued writing checks, and merchants continued accepting them, relying on her check

18   guarantee card.  NFCU continued covering her checks, pursuant to the check guarantee card

19   obligations.

20           On April 26, 1988, the late LVMPD Detective Michael Maddock prepared an affidavit

21   for an arrest warrant seeking the arrest of Plaintiff for the charge of "nonsufficient funds checks."

22   The warrant alleged that Plaintiff cashed eleven separate personal checks at Skaggs Alpha Beta

23   from January 15 to January 23, 1988, totaling $896.66.  The warrant further alleged that Francis

24   McCauley, a handwriting expert, examined the handwriting on the ten checks and confirmed that

25                                                Page 2 of  17

1   the same person that wrote the checks was the person that signed for the NFCU check card.  The

2   warrant stated that Plaintiff presented the bank card at the time she passed the checks.  Detective

3   Maddock submitted the affidavit to the District Attorney's Office and the D.A. reviewed the

4   materials and approved the case for prosecution.  On April 29, 1988, D.A. Valeria Vega filed a

5   criminal complaint in Justice Court in Clark County, Nevada charging Plaintiff with nine counts

6   of drawing and passing checks with insufficient funds.  On May 2, 1988, Judge James Bixler

7   signed the warrant of arrest.  Plaintiff's name turned up in the National Crime Information Center

8   as a wanted person in the state of Nevada.  On January 29, 1990, Detective Maddock submitted

9   additional information showing that Plaintiff wrote other bad checks under various aliases.  On

10  February 1, 1990, Detective P. Beckman discovered Plaintiff's location and arrested her at a Las

11  Vegas residence.

12      On March 21, 1990, Plaintiff appeared before the Justice Court; four counts were

13  dismissed, and she was bound over for trial on five remaining counts on a finding of probable

14  cause.  On April 4, 1990, the D.A.'s office filed an Information charging Plaintiff with five

15  counts of violating NRS 205.130.  Detective Maddock then engaged a handwriting expert to

16  evaluate copies of the original checks allegedly written by Plaintiff.  Plaintiff entered a plea of

17  not guilty on April 5, 1990.  The case was tried before Judge Nancy Becker, and the jury returned

18  a conviction on all five counts on January 12, 1991.  After finding Plaintiff to be a habitual

19  criminal under NRS 207.020.2, Judge Becker sentenced Plaintiff to five life sentences with the

20  possibility of parole on January 18, 1991.  The Nevada Supreme Court rejected Plaintiff's direct

21  appeal in March 1992.  The state trial court denied her petition for post-conviction relief in

22  September 1994, and her habeas petition in August 1995.  The Nevada Supreme Court affirmed

23  both denials in November 1997.

24

25                              Page 3 of  17

1    Plaintiff filed a federal habeas petition in July 1998, which the District Court denied in

2    July 2004.  Plaintiff then appealed the denial to the Ninth Circuit.  In the meantime, after twelve

3    years of incarceration, Plaintiff was released on lifetime parole.  Despite her parole, the Ninth

4    Circuit retained jurisdiction over the case on February 1, 2006.  *Goldyn v. Hayes*, 436 F.3d 1104

5    (9th Cir. 2006).  Then, on April 11, 2006, the Ninth Circuit issued an Amended Opinion,

6    overturning Plaintiff's conviction.  Judge Kozinski's opinion was based on a different

7    interpretation of Nevada's criminal check writing statute, rather than any misconduct by the

8    police or prosecution.  NRS 205.130 forbids a person from passing a check to obtain money

9    when "the person has insufficient money, property or *credit*" to pay in full.  NRS 205.130(1)

10   (emphasis added).  The Ninth Circuit held that Plaintiff's behavior did not violate the statute

11   because her NFCU bank card was sufficient credit to back the checks:

> The simple fact is that the checks Goldyn wrote were not bad; they were paid in
> full pursuant to a contract under which she had bound herself to repay the bank
> for the monies so advanced.  Goldyn thus had an "arrangement or understanding
> with [NFCU] for payment of [her] checks[s]."  NRS 205.130(4) [defining
> meaning of "credit" in the statute].  The Nevada Supreme Court's own finding
> that NFCU was obligated to pay Goldyn's checks establishes as a matter of law
> that Goldyn had sufficient "credit" – as defined by the Nevada statute – to cover
> her checks. . . .  Of course, Goldyn might have been prosecuted for defrauding the
> bank.  But, the state charged her with writing bad checks, not fraud on the bank.
> And Goldyn cannot be sent to prison for a crime she didn't commit because she
> may be guilty of a different crime altogether.

18   *Goldyn*, 444 F.3d at 1080.

19   Following the reversal of her conviction, Plaintiff commenced this § 1983 action against

20   all involved state officers and entities.  She brings two separate federal causes of action for

21   violation of her civil rights and substantive due process rights.  Plaintiff also includes five state

22   claims for malicious prosecution, false arrest and imprisonment, intentional infliction of

23   emotional distress, negligent infliction of emotional distress, and loss of consortium.  Plaintiff

24   was sick when she filed this Complaint and originally included her heirs, Jon Trujillo, Tracey

25   Page 4 of  17

1 Casteneda, and Nickolas Castenada, as co-Plaintiffs in the action.  Her counsel now admits that

2 these co-Plaintiffs were prematurely added and should now be dismissed.  Defendants now seek

3 dismissal of all claims at summary judgment (#59).  Plaintiff counters by asking for Rule 56(f)

4 leave to take further discovery (#68), and also seeks to amend the complaint to include additional

5 defendants not originally sued (#60).

6 **DISCUSSION**

7 **I.    Defendants' Motion for Summary Judgment**

8 **A.    Summary Judgment Standard of Review**

9 The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

10 as to the material facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

11 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is proper if the evidence shows that there

12 is no genuine issue as to any material fact and the moving party is entitled to judgment as a

13 matter of law.  Fed. R. Civ. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where

14 reasonable minds could differ on the material facts at issue, summary judgment is not

15 appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  As summary

16 judgment allows a court to dispose of factually unsupported claims, the court construes the

17 evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazari*, 84 F.3d 1194,

18 1197 (9th Cir. 1996).

19 The moving party bears the burden of informing the court of the basis for its motion,

20 together with evidence demonstrating the absence of any genuine issue of material fact.  *Celotex*,

21 477 U.S. at 323.  Once the moving party has met its burden, the party opposing the motion may

22 not rest on the mere allegations or denials of its pleadings, but must set forth specific facts

23 showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

24 248 (1986).  When the nonmoving party bears the burden of a claim or defense at trial, the

25 Page 5 of  17

moving party can meet its initial burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325. Conversely, when the moving party bears the burden of proof at trial, then it must establish each element of its case at summary judgment.

### B.    Analysis

Defendant LVMPD seeks summary judgment on the grounds that the facts alleged do not support Plaintiff's causes of action.  Defendant essentially contends that the Ninth Circuit's decision overturning Plaintiff's conviction was based on a contrary technical reading of the stature, rather than any misconduct on the Government's part.  The record reveals that although the involved police and judicial officers' understanding of NRS 205.130 may have differed with the Ninth Circuit's later ruling, they acted in an objectively reasonable manner in effecting the prosecution and should not be held civilly liable.

### 1.    Section 1983 Causes of Action

Plaintiff brings two claims under Section 1983 for violation of constitutional rights. First, Plaintiff claims that Defendants' "outrageous, unjust and improper actions in bringing about [her] arrest and conviction," violated her "civil rights" under Section 1983.  Second, Plaintiff alleges that the same "outrageous" actions violated her substantive due process rights. To state a valid cause of action under Section 1983, Plaintiff must show that Defendants were acting under color of state law and deprived her of a constitutional right. *Barry v. Fowler*, 902 F.2d 770, 771 (9th Cir. 1990).  LVMPD officers here are insulated from liability because they acted pursuant to probable cause and in accordance with the independent judgment of the District Attorney and local magistrate.

### a.    Probable Cause

To succeed in proving her arrest was unconstitutional in violation of the Fourth

1    Amendment, Plaintiff must show the arrest lacked probable cause. *Id.* at 772.  Probable cause

2    to make an arrest exists if the facts and circumstances within the arresting officer's knowledge

3    were "sufficient to warrant a prudent man in believing that the arrestee had committed or was

4    committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  "Probable cause requires only

5    a probability or substantial chance of criminal activity, not an actual showing of such activity."

6    *Illinois v. Gates*, 462 U.S. 214, 244 n. 13 (1983).  The standard is not one of absolute certainty,

7    but of "fair probability" that the suspect was involved in criminal behavior.  *United States v.*

8    *Potter*, 895 F.2d 1231, 1233 (9th Cir. 1990).  As a civil litigant, Plaintiff bears the burden of

9    proving the absence of probable cause.  *Gilker v. Baker*, 576 F.2d 245 (9th Cir. 1978).  In a §

10   1983 action, only the objective conduct of the officer is relevant; the officer's subjective intent

11   is disregarded.  *Wren v. United States*, 517 U.S. 806, 814 (1996).

12          Relevant to this case, an arrest is not violative of the Fourth Amendment if there was

13   probable cause to support an arrest on a related criminal offense, even if not charged.  *Avery v.*

14   *King*, 110 F.3d 12, 14-15 (6th Cir. 1997).  On this point, the Fifth Circuit held that "[a] police

15   officer need not actually have had the crime for which probable cause existed in mind at the time

16   of the arrest; rather, the question is 'whether the conduct that served as the basis for the charge

17   for which there was no probable cause could, in the eyes of a similarly situated reasonable

18   officer, also have served as the basis for a charge for which there was probable cause.'" *Gassner*

19   *v. Garland*, 864 F.2d 394, 398 (5th Cir.1989) (internal quotations omitted).  The facts, as alleged

20   by Plaintiff, in this case establish that the involved LVMPD officers acted with probable cause

21   in arresting Plaintiff.  The information gleaned from Detective Maddock's investigation would

22   have revealed to a reasonably objective officer that there was a "fair probability" Plaintiff was

23   engaged in criminal conduct.  Detective Maddock discovered that Plaintiff wrote a series of

24   eleven checks at one location and passed them to ten different persons over eight days.  She had

25                                    Page 7 of  17

insufficient funds in her account to cover all of these checks.  NFCU had demanded payment on these checks in a certified letter to Plaintiff on February 26, 1988, but Plaintiff failed to respond during the subsequent two months – during which time Maddock was preparing the arrest warrant application.  The Detectives also discovered that Plaintiff was a fugitive wanted in both California and Colorado.  They found out that Plaintiff was using several alias names in passing numerous unsupported checks.  Given these circumstances, it was objectively reasonable to believe criminal activity was afoot and to submit the case to the D.A.  The District Attorney approved the case for prosecution and request for a warrant and the local Magistrate issued the warrant upon a finding of probable cause.  That ruling has never been overturned.

The fact that the Ninth Circuit later overturned the conviction does not strip the Detectives of probable cause in effectuating the arrest.  First, the facts above show that it was reasonable for the LVMPD officers to believe that Plaintiff was engaged in criminal activity. It was not their responsibility to determine what charges to bring against her.  Second, the reviewing D.A. and judge exercised independent judgment in deciding to prosecute the case and issue the arrest warrant.  Several reviewing courts, including the Nevada Supreme Court, sustained Plaintiff's conviction after trial.  While the Ninth Circuit later disagreed with the D.A., trial judge, and Nevada Supreme Court's interpretation of NRS 205.130, it is not beyond the purview of LVMPD detectives to anticipate subsequent, technical legal interpretations.  The fact that the relevant legal authorities responsible for evaluating the Nevada statute all felt it appropriate to charge Plaintiff supports the LVMPD officers' decision to go forward with the prosecution and arrest.  Even the Ninth Circuit noted that Plaintiff was likely guilty of defrauding the bank.  As the presence of probable cause to arrest on a related crime is sufficient to prevent Section 1983 liability, the LVMPD is not liable as a matter of law and is immune from suit. *Avery*, 110 F.3d at 14-15.

Page 8 of  17

### b.       Prosecutorial Immunity

LVMPD also claims that because a prosecuting attorney approved the case before any arrest was made, any constitutional claim against it fails as a matter of law.  A police officer is insulated from liability for damages arising from a criminal case where the prosecutor exercised independent judgment in determining there was probable cause to file charges.  *See Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981).   A police officer cannot be held liable for prosecution, even though he effectuated the arrest, unless the officer included false statements or failed to include relevant and exculpatory information in the warrant application.  *Sloman v. Tadlock*, 21 F.3d 1462, 1475 (9th Cir. 1994).  The presumption is that the prosecutor made an independent judgment.  *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988).  In a claim for false arrest, "the chain of causation is broken if the filing of the information by the attorney . . . was free of pressure or influence exerted by the police officers or knowing misstatements made by the officers."  *Senra v. Cunningham*, 9 F.3d 168, 173 (1st Cir. 1993).

In this case, it is undisputed that a screening attorney from the D.A.'s office examined the arrest warrant application submitted by Detective Maddock and came to the conclusion that there was probable cause to pursue charges against Plaintiff.  There is no evidence that Maddock or any other LVMPD officer tainted the application by including false information or withholding exculpatory evidence.  Indeed, Detective Maddock included information in the warrant noting that Plaintiff presented the check card at the time she cashed the checks and that NCFU was the principal victim in the affair.  Thus, Plaintiff has not met its burden to rebut the presumption that the prosecuting attorney exercised independent judgment in approving the case for prosecution.  As such, the LVMPD officers involved in the case are insulated from Section 1983 by prosecutorial immunity.

Page 9 of  17

1

**c.    Issuance of Warrant by Magistrate**

2    When an arrest is made pursuant to a warrant, an officer is immune from suit unless the

3    warrant application is devoid of any indicia of probable cause. *Malley v. Briggs*, 475 U.S. 335,

4    344-45 (1986). In this case, a neutral and detached magistrate found probable cause existed for

5    Plaintiff's arrest and issued an arrest warrant. There is no evidence that the warrant application

6    was lacking in indicia of probable cause or that the involved LVMPD officers tainted the

7    application in any way. "It is well settled that if facts supporting an arrest are placed before an

8    independent intermediary such as a magistrate, the intermediary's decision breaks the chain of

9    causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456-57

10    (5th cir. 1994). Here, a judge reviewed the arrest warrant application and independently

11    concluded it was proper to arrest Plaintiff. There is no evidence the LVMPD officers acted

12    improperly in submitting the application or executing it. Therefore, they are shielded from

13    liability.

14

**d.    Outrageous Conduct**

15    Plaintiff alleges that Defendant's behavior rose to the level to shock the conscience in

16    violation of the Substantive Due Process Clause. To assert this claim, Plaintiff must show the

17    Government's conduct was "so egregious, so outrageous, that it may be fairly said to shock the

18    contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998).

19    Plaintiff must also show the deprivation of a liberty interest. *Brittain v. Hansen*, 451 F.3d 982,

20    991 (9th Cir. 2006).

21    Substantive due process claims for outrageous behavior are only colorable under Section

22    1983 in the rarest of circumstances. Courts only ratify substantive due process claims when there

23    is an extreme showing of outrageous behavior. *See, e.g., Pittsley v. Warish*, 927 F.2d 3, 7 (1st

24    Cir. 1991) (police officers threats to children that they would never see plaintiff again and refusal

25

1    to let plaintiff hug children goodbye did not shock the conscience in violation of the Due Process

2    Clause); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (threats causing fear for

3    plaintiff's life did not infringe constitutional right and not actionable under Section 1983);

4    *United States v. Dudden*, 65 F.3d 1461, 1466 (9th Cir. 1995) (indicting plaintiff to coerce her

5    companion into becoming confidential information did not shock the conscience).

6         In this case, there is no evidence of any behavior so egregious as to satisfy this high

7    threshold.  Detective Maddock obtained information that a woman, operating under various

8    aliases, was passing numerous checks with insufficient funds.  He discovered she was a fugitive

9    in two states and passed along all relevant information to the D.A. for screening. The D.A.

10   approved the case and the judge signed the warrant.  There is no evidence of police misconduct,

11   much less egregious police misconduct.  The LVMPD's officers' failure in this case, if any,

12   stemmed from their imperfect understanding of the law (or of what the Ninth Circuit would later

13   hold the law to be).  Plaintiff has proffered no evidence to create a question of material fact as

14   to the propriety of LVMPD's conduct.  Thus, her substantive due process claim must fail.

15                    **e.    *Monell* Claim**

16        Plaintiff also brings a *Monell* claim against LVMPD for issuing policies that deprived

17   her of constitutional rights.  An entity may be held liable in a Section 1983 suit when the entity

18   is a moving force, through existing policies or customs, behind their employees undertaking

19   unconstitutional actions.  *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978).

20   Liability is only found where "execution of the government's policy or custom . . . inflicts the

21   injury" to the plaintiff.  *City of Canton v. Harris*, 489 U.S. 378, 398 (1989).  *Monell* liability

22   involves direct municipality causation, rather than liability in respondeat superior.  *Board of*

23   *County Comm. of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).  A single constitutional

24   deprivation by a non-policy making official is insufficient to establish a long standing practice

25                         Page 11 of  17

or custom for purposes of *Monell* liability. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). In this case, Plaintiff has failed to identify any LVMPD policy or custom that caused officers to effectuate her arrest. Even if Plaintiff succeeded in proving a constitutional deprivation, she has not shown that the deprivation was linked to a LVMPD issued policy. Without evidence of any offensive policy or custom, Plaintiff's argument thus rests on a fruitless respondeat superior theory.

### 2.    State Causes of Action

#### a.    False Arrest and False Imprisonment

Under Nevada law, the issuance of a valid warrant is an absolute bar to causes of action for false arrest or false imprisonment. *Nelson v. City of Las Vegas*, 99 Nev. 548, 552-53 (1983). "The facially valid warrant provides the legal justification for the arrest," and defendant officers "may not be held liable for [plaintiff's] arrest." *Id.* Instead, a plaintiff arrested pursuant to a valid warrant must seek relief in an action for malicious prosecution. The record here clearly demonstrates that Plaintiff was arrested pursuant to a warrant properly issued by a neutral magistrate. Therefore, Plaintiff's claims for false arrest and false imprisonment under Nevada law should be dismissed.

#### b.    Malicious Prosecution

Plaintiff's malicious prosecution claim should also be dismissed as Plaintiff has failed to bring evidence of necessary elements of the claim. After dismissal of a criminal prosecution, a plaintiff may prevail on an action for malicious prosecution by proving: (1) a lack of probable cause, (2) malice, (3) a favorable termination of the litigation, and (4) damages. Obviously, Plaintiff has here satisfied elements (3) and (4). A finding of probable cause implies that malice does not exist, and negates a malicious prosecution action. *Rashidi v. Roe*, 818 F. Supp. 1354, 1360 (D. Nev. 1993). Malice is satisfied by showing the prosecution was pursued with reckless

Page 12 of  17

disregard for the rights of the Plaintiff.  *Smith v. Sneed*, 938 S.W.2d 183 (Tex. App. 1997).  In this case, Plaintiff offers no evidence to support a showing of malice.  The essential basis for Plaintiff's suit is that the LVMPD and relevant legal authorities misunderstood the applicable check passing statute in pursuing her conviction.  However, it appears the Defendants acted in good faith in undertaking the investigation and pursuing charges.  The fact that Plaintiff was later found innocent on a technical reading of NRS 205.130 does not create any possibility of a finding of malice.  Furthermore, as previously discussed, the record shows that Defendants acted with probable cause in arresting and prosecuting Plaintiff.  Therefore, her malicious prosecution claim must be dismissed.

### c.      Intentional Infliction of Emotional Distress

An action for intentional infliction of emotional distress requires a showing of: (1) extreme and outrageous conduct, (2) extreme emotional distress, and (3) causation.  *Star v. Rabello*, 97 Nev. 124, 125 (1981).  Outrageous conduct involves "actions of the defendant [that] go beyond all possible bounds of decency, [and are] atrocious and utterly intolerable." *Hirschhorn v. Sizzler Restaurants Int'l, Inc.*, 913 F. Supp. 1393, 1401 (D. Nev. 1995).  There is simply no evidence, and no allegation, that Defendants engaged in behavior this extreme and inappropriate, as a matter of law.  As discussed previously, the LVMPD officers' principal shortcoming was their misreading of the applicable check passing statute.  There is no evidence to suggest they investigated or prosecuted Plaintiff in a manner that exceeded "all possible bounds of decency."  Thus, Plaintiff's intentional infliction of emotional distress claim should be dismissed.

### d.      Negligent Infliction of Emotional Distress

Federal and state courts are in harmony in refusing to recognize a cause of action based on negligent police investigation.  *See, e.g.*, *Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir. 1977);

1    *Dirienzo v. United States*, 690 F. Supp. 1149 (D. Conn. 1988); *Johnson v. City of Pacifica*, 4 Cal.

2    App. 3d 82, 84 (Cal. App. 1970); *Waskey v. Municipality of Anchorage*, 909 P.2d 342, 344-45

3    (Alaska 1996).  One court, after reviewing the case law on the issue, stated that it "uncovered

4    no states that have held that a cause of action for negligent investigation exists."  *Wimer v. State*,

5    841 P.2d 453, 455 (Idaho App. 1992).  These courts all hold that the only claims for faulty

6    investigations are for false arrest or malicious prosecution, depending on whether there was

7    probable cause.  Therefore, Plaintiff's malicious prosecution claim must fail.

8                                **e.**      **Loss of Consortium**

9            As Plaintiff now concedes that the originally named co-Plaintiffs should be dismissed

10   from the case, the consortium claims are moot and should also be dismissed.

11   **II.     Plaintiff's Rule 56(f) Motion for Leave to Supplement**

12           Plaintiff's opposes summary judgment solely by advancing a Rule 56(f) motion for leave

13   to supplement.  She offers no substantive counter-arguments to Defendant's contentions and

14   brings no new evidence outside the pleadings.  Plaintiff hired new counsel recently, and he

15   asserts that prior counsel failed to properly manage the case, leading to lackluster discovery and

16   the inclusion of improper parties.  Plaintiff's present counsel now seeks leave under Rule 56(f)

17   to take additional depositions and complete discovery before responding to the substantive

18   arguments in Defendant's Motion for Summary Judgment.

19           Federal Rule of Civil Procedure 56(f) instructs that if a party has good reason for failure

20   to state facts in opposition to summary judgment, then the party may seek a continuance until

21   depositions or other discovery is conducted.  Plaintiff has set depositions with Officer Dennis

22   Thompson, supervisor of the late Detective Maddock, District Attorney Rex Bell, and Chief

23   Deputy Attorney Frank Ponticello.  Plaintiff anticipates these depositions will unveil additional

24

25                                   Page 14 of  17

1   information regarding the Defendants' policies, practices, and procedures governing the LVMPD

2   bad check unit.

3          To use Rule 56(f) to continue a motion for summary judgment, the non-moving party

4   must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit

5   from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are

6   'essential' to resist the summary judgment motion." *California v. Campbell*, 138 F.3d 772, 779

7   (9th Cir. 1997). "The mere hope that further evidence may develop prior to trial is an

8   insufficient basis for a continuance under Rule 56(f)." *Continental Maritime of San Francisco,*

9   *Inc. v. Pacific Coast Metal Trades District Council*, 817 F.2d 1391, 1395 (9th Cir. 1987).

10          Here, Plaintiff fails to attach an affidavit detailing the information sought and how it

11   would avoid summary judgment. She fails to identify specific facts that exist and are essential

12   to resisting Defendant's various arguments. Furthermore, Rule 56(f) requests should be carefully

13   evaluated when they interact with qualified immunity claims. In this case, Plaintiff seeks to

14   amend her complaint to add Detective Maddock's estate as a Defendant. Detective Maddock is

15   likely protected in this case by qualified immunity as the record shows he acted in an objectively

16   reasonable manner in conducting the investigation. *Saucier v. Katz*, 533 U.S. 194 (2001). In

17   cases involving clear qualified immunity, courts have limited 56(f) discretion, holding that

18          a plaintiff's 56(f) affidavit must demonstrate how discovery will enable them to
            rebut a defendant's showing of objective reasonableness or, stated alternatively,
19          demonstrate a connection between information he would seek in discovery and
            the validity of the defendant's qualified immunity assertion. . . . To that end, it
20          is insufficient for the party opposing the motion to merely assert that additional
            discovery is required to demonstrate a factual dispute or that there may be
21          evidence supporting a party's allegation in opposing party's hands.

22   *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758-59 (10th Cir. 1990). Plaintiff's motion fails to

23   specifically identify how further discovery will help her rebut the qualified immunity defense.

24          As Plaintiff's Rule 56(f) motion lacks an appropriate affidavit, fails to assert what

25                                         Page 15 of  17

1   existing facts are sought through the continuance, and does not circumvent the qualified

2   immunity defense, the motion is denied and Defendants' motion for summary judgment is

3   granted.

4   **III.    Motion to Amend**

5          Plaintiff seeks leave to add the estate of Detective Maddock and D.A. Frank Ponticello

6   as additional Defendants in this case.  Maddock was the lead detective in Plaintiff's investigation

7   and Ponticello prosecuted the case at trial.  Federal Rule of Civil Procedure 15(a) provides that

8   a party may amend its pleadings by leave of the court and leave shall be freely given when justice

9   so requires.  The Supreme Court has emphasized that there is a strong presumption in favor of

10   granting leave to amend:

11          In the absence of any apparent or declared reason – such as undue delay, bad faith
            or dilatory motive on the part of the movant, repeated failure to cure deficiencies
12          by amendments previously allowed, undue prejudice to the opposing party by
            virtue of allowance of the amendment, futility of the amendment, etc. – the leave
13          should, as the rules require, be "freely given."

14   *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment should be denied when it is futile

15   and would not prevent summary judgment or dismissal.  *Kagen v. State of Nevada*, 35 F. Supp.

16   2d 771, 772 (D. Nev. 1999).

17          Plaintiff's Motion to Amend is defective on two grounds.  First, it is untimely.  This

18   Court's Scheduling Order required that all motions to amend be filed by April 4, 2007, and

19   Plaintiff's Motion was not filed until June 1, 2007.  Plaintiff submits that irreconcilable

20   differences with her prior attorney caused the neglect.  However, even if the Court accepts this

21   representation, the amendment would still be futile.  Plaintiff has known that Detective Maddock

22   and D.A. Ponticello were the principal actors in her case since well before the inception of this

23   civil case. "Where the party seeking amendment knows or should know of the facts upon which

24   the proposed amendment is based but fails to include them in the original complaint, the motion

25                                      Page 16 of  17

1    to amend may be denied." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.

2    1982).  Furthermore, adding Detective Maddock to the case would be futile as he is protected

3    by qualified immunity for his actions.  The record reveals he acted in an objectively reasonable

4    manner and with probable cause in conducting the investigation.  *See Burrell v. McIlroy*, 464

5    F.3d 853, 858 (9th Cir. 2006).  As such, there was "arguable probable cause" for his actions and

6    he is immune from suit.  *See Provost v. City of Newburgh*, 262 F.3d 146, 169 (2d Cir. 2001).

7    Prosecutor Ponticello, on the other hand, is protected by the doctrine of prosecutorial immunity

8    and immune from any Section 1983 damages.  *See Imbler v. Pachtman*, 424 U.S. 409, 430-31

9    (1976).  Therefore, the additions of proposed Defendants Maddock and Ponticello would be

10   untimely and futile and must be rejected.

11                                    **CONCLUSION**

12          IT IS HEREBY ORDERED that Defendant LVMPD's Motion for Summary Judgment

13   (#59) is *granted*.  There is no evidence to support a Section 1983 or state tort action against

14   LVMPD for its actions in investigating and prosecuting Plaintiff.  Plaintiff's Countermotion for

15   56(f) Leave to Supplement (#68) is *denied* as Plaintiff has not identified specific facts that would

16   help her to resist summary judgment.  Plaintiff's Motion to Amend Complaint (#60) is also

17   *denied* as the attempt to add the proposed new Defendants would be futile.

18          DATED:          August 30, 2007

19

20                                                  _____

21                                                  ROBERT C. JONES
                                                    UNITED STATES DISTRICT JUDGE

22

23

24

25                                    Page 17 of  17